JS-6

**NOTE CHANGES MADE BY COURT.**

FILED
CLERK, U.S. DISTRICT COURT

3/28/2017

CENTRAL DISTRICT OF CALIFORNIA
BY: ___CW___ DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| **Mark Jones**, an individual, **George Saadi**, an individual, and **Vamprechaun Productions, LLC**, a California limited liability company,<br><br>Plaintiffs,<br><br>vs.<br><br>**Lance Eric Thompson**, an individual, **Connie Diane Thompson**, an individual, **Portsmouth Pictures, LLC,** a Michigan limited liability company, and **Does 1 through 10**, Inclusive,<br><br>Defendants | Case No. 2:17-cv-1619-MWF-RAO<br><br>Case Assigned to Hon. Michael W. Fitzgerald, U.S. District Judge<br><br>**JUDGMENT PURSUANT TO STIPULATION** |

1

Plaintiffs **Mark Jones**, an individual ("Jones"), **George Saadi**, an individual ("Saadi"), and **Vamprechaun Productions, LLC**, a California limited liability company ("Vamprechaun Productions"), collectively "Plaintiffs," on the one hand, and, on the other hand, Defendants **Lance Eric Thompson**, an individual ("Lance Thompson"), **Connie Diane Thompson**, an individual ("Connie Thompson"), and **Portsmouth Pictures, LLC,** a Michigan limited liability company ("Portsmouth Pictures"), collectively "Defendants," having entered into a Stipulation for Entry of Judgment **filed March 23, 2017, (Docket No. 12),** and good cause appearing therefor,

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that Judgment be entered in favor of Plaintiffs, and each of them, and against Defendants, and each of them, as follows:

1. *Determination of the Parties' Respective Rights, Titles and Interests.* The Parties having so stipulated and agreed, the Court on that basis finds, orders, adjudges and decrees, that:

    a. In or before 2009, Jones, alone, created the idea for a fictitious character he termed the "vamprechaun" -- part vampire and part leprechaun -- of which Jones was and is the sole and exclusive creator;

    b. Lance Thompson was not a "creator," "co-creator," "author" or "co-author" of the "vamprechaun" character;

    c. Defendants, and each of them, have no right, title or interest whatsoever in or to the "vamprechaun" character;

    d. Jones was and is the sole and exclusive author of his script entitled "Vamprechaun;"

e. Jones is the sole and exclusive owner of exclusive rights, under the Copyright Act (17 U.S.C. Sec. 101 et seq.) and other laws of the United States and the State of California, in and to that certain literary work consisting of the script entitled "Vamprechaun;"

f. Jones is the sole author and copyright claimant with respect to the copyright in the script registered with the Register of Copyrights, U.S. Copyright Office, as a literary work completed in 2013, issued copyright registration number TXu 2019581;

g. Defendants, and each of them, had no part whatsoever in the authoring of the "Vamprechaun" script;

h. Defendants, and each of them, have no copyright or other rights, title or interest in or to the script entitled "Vamprechaun" that was registered by Jones with the Register of Copyrights, U.S. Copyright Office, or any right, title or interest in or to Jones' Writers Guild of America West, Inc., registration of said script;

i. At no time has Jones, Saadi or Vamprechaun Productions ever had any partnership or other form of joint business entity with Defendants, or any of them, arising from or in any way relating to the "Vamprechaun" character, or the "Vamprechaun" script, project or production;

j. There was never any other agreement between Plaintiffs, or any of them, and Defendants, or any of them, for Defendants, or any of them, to be compensated for any time or efforts he expended, or any expenses they, or any of them, may have incurred, in connection with the "Vamprechaun" project;

k. Any discussions between Jones and Lance Thompson regarding

3

the possibility of Lance Thompson (or Portsmouth Pictures) becoming involved in the "Vamprechaun" project, or receiving any credit or compensation relating thereto, was premised and conditioned entirely on Lance Thompson obtaining the financing for the project, which Lance Thompson never succeeded in doing;

  l. Neither Jones, nor Saadi, nor Vamprechaun Productions has ever promised, sold, gifted, granted, licensed, transferred or otherwise conveyed to Defendants, or any of them, by any means or in any manner whatsoever, any right, title or interest in and to either the "Vamprechaun" character or Jones's script entitled "Vamprechaun," or in and to the copyrights or other rights of any kind or nature whatsoever therein, or related thereto;

  m. Neither Jones, nor Saadi, nor Vamprechaun Productions has ever consented to, permitted, authorized or ratified any acts by Defendants, or any of them, wherein said Defendant(s) asserted any right, title or interest of any kind or nature whatsoever in or to either the "Vamprechaun" character or Jones's script entitled "Vamprechaun," or with respect to the "Vamprechaun" project or production;

  n. On May 18, 2015, Lance Thompson and his wife, Connie Thompson, jointly filed a Voluntary Petition in the United State Bankruptcy Court for the Central District of California, under Chapter 13 of the Bankruptcy Code (Case No. 2:15-bk-17932-NB). That bankruptcy was converted by the debtors from Chapter 13 to Chapter 7 on June 24, 2015. The Thompsons' bankruptcy under Chapter 7, pursuant to that Petition, was discharged effective April 8, 2016. (This is hereinafter referred to as the "2015 Bankruptcy.");

  o. On September 9, 2016, Lance Thompson and his wife, Connie

Thompson, jointly filed a Voluntary Petition in the United State Bankruptcy Court for the Central District of California, under Chapter 13 of the Bankruptcy Code (Case No. 2:16-bk-22203-WB). The Thompsons' bankruptcy under Chapter 13, pursuant to that Petition, was ordered dismissed for failure to appear at the Section 341(a) meeting of creditors, on October 28, 2016. (This is hereinafter referred to as the "2016 Bankruptcy.");

p. Assuming *arguendo* that it could ever be determined that Lance Thompson and/or Connie Thompson ever had any authorship, ownership, trademark or copyright rights, title or interests in either the "vamprechaun" character or the "Vamprechaun" script, or any partnership or other form of joint business organization with Plaintiffs or any of them, such rights, title or interests would have been assets that were necessarily within the scope of their 2015 and 2016 Bankruptcies, and which therefore would have automatically devolved to the bankrupt estate, such that neither Lance Thompson nor Connie Thompson can have had any such asset or interest since the discharge and closing of their 2015 and 2016 Bankruptcies under Chapters 7 and 13;

q. By virtue of having failed to identify, claim and include any such assets, rights, title or interests in their bankruptcy filings, Lance Thompson and Connie Thompson are each now estopped to assert that any such assets, rights, title or interests ever in fact existed at all, and have waived any such claims, assets, rights, title or interests; and

r. Since at least the filing of their 2015 Bankruptcy, as well as since the filing of their 2016 Bankruptcy, and by virtue of such bankruptcy proceedings, Lance Thompson and Connie Thompson have not had, do not have,

and cannot have any right, title or interest whatsoever in the "vamprechaun" character, the copyrighted "Vamprechaun" script, any aspect of the "Vamprechaun" project, or any alleged "partnership" or other form of joint business entity with any of Plaintiffs.

    s. Defendants, and each of them, have had, have, and shall in the future have, no rights, title or interests of any kind or nature whatsoever (including without limitation any rights of participation or creative involvement in), and no entitlement, interests or expectancy in or to any credits, attributions, compensation, remuneration or other consideration of any kind or nature whatsoever, arising from or relating in any way to the "Vamprechaun" character, script, project or production.

    t. Defendants, and each of them, have had, have, and shall in the future have, no rights, title or interests of any kind or nature whatsoever (including without limitation any rights of participation or creative involvement in), and no entitlement, interests or expectancy in or to any credits, attributions, compensation, remuneration or other consideration of any kind or nature whatsoever, arising from or relating in any way to any other properties, ideas, titles, treatments, scripts, projects or productions of any kind or nature whatsoever created or owned in whole or in part by either Jones or Saadi (including without limitation the projects known as "Space Puppies," "Dirt Clods," "Cave Fighters," "Cupid" and "Clown"); provided, however, that the sole exception shall be that the rights (if any) of Defendants, or any of them, in the motion picture production entitled "Scorned" and in Scorned Productions, LLC, have not been forfeited and are not affected hereby; further provided, however, that Jones expressly reserves all rights, title,

6

Jones, et al. v. Thompson et al.,         JUDGMENT PURSUANT TO STIPULATION
2:17-cv-1619-MWF-RAO

interests and claims that exist or may hereafter exist or arise with respect to the motion picture production entitled "Scorned" and in Scorned Productions, LLC.

2. *Permanent Injunction.* The Parties having so stipulated and agreed, the Court on that basis finds, orders, adjudges and decrees, that Defendants, and each of them, their respective officers, members, principals, agents, representatives, servants, employees, successors and assigns, and all persons or entities acting by, through, under, on behalf of, or in active concert or participation with any of them who receive actual ~~or constructive~~ knowledge or notice of this Judgment by personal service, facsimile transmission ("fax"), email or otherwise, whether acting directly or through any corporation, subsidiary, division, or other device, are hereby permanently enjoined and restrained from:

    a. Representing, asserting, alleging, claiming or stating, or assisting others who are representing, asserting, alleging, claiming or stating expressly or by implication, that:

        1) Defendants, or either of them, was ever a "creator," "co-creator," "author" or "co-author" of the "vamprechaun" character, in whole or in part;

        2) Defendants, or either of them, has or ever had any right, title or interest whatsoever in or to the "vamprechaun" character;

        3) Jones did not solely and exclusively create the idea for a fictitious character he termed the "vamprechaun"—part vampire and part leprechaun;

        4) Jones was and is not the sole and exclusive author of his script entitled "Vamprechaun;"

5) Jones is not the sole and exclusive owner of exclusive rights, under the Copyright Act (17 U.S.C. Sec. 101 et seq.) and other laws of the United States and the State of California, in and to that certain literary work consisting of the script entitled "Vamprechaun;"

6) Jones is not the sole author and copyright claimant with respect to the copyright in the script registered with the Register of Copyrights, U.S. Copyright Office, as a literary work completed in 2013, issued copyright registration number TXu 2019581;

7) Defendants, or either of them, had any part whatsoever in the authoring of the "Vamprechaun" script;

8) Defendants, or either of them has ever had, now has, or will in the future have, any copyright or other rights, title or interest in or to the script entitled "Vamprechaun" that was registered by Jones with the Register of Copyrights, U.S. Copyright Office, or any right, title or interest in or to Jones' Writers Guild of America West, Inc., registration of said script;

9) Jones, Saadi and Vamprechaun Productions, or any of them, ever had, now has, or will in the future have any partnership or other form of joint business entity with Defendants, or any of them, arising from or in any way relating to the "Vamprechaun" character, or the "Vamprechaun" script, project or production;

10) There was ever any other agreement of any kind or nature, on any terms or conditions, between Jones, Saadi and Vamprechaun Productions, or any of them, and Defendants, or any of them, for Defendants, or any of them, to be compensated for any time or efforts he expended, or any

expenses they, or any of them, may have incurred, in connection with the "Vamprechaun" project;

11) Defendants, or any of them, ever succeeded in, or contributed toward, obtaining financing, in whole or in part, for the "Vamprechaun" project;

12) Jones, Saadi, and Vamprechaun Productions, or any of them, has ever promised, sold, gifted, granted, licensed, transferred or otherwise conveyed to Defendants, or any of them, by any means or in any manner whatsoever, any right, title or interest in and to either the "Vamprechaun" character or Jones's script entitled "Vamprechaun," or in and to the copyrights or other rights of any kind or nature whatsoever therein, or related thereto;

13) Jones, Saadi, and Vamprechaun Productions, or any of them, has ever consented to, permitted, authorized or ratified any acts by Defendants, or any of them, wherein said Defendant(s) asserted any right, title or interest of any kind or nature whatsoever in or to either the "Vamprechaun" character or Jones's script entitled "Vamprechaun," or with respect to the "Vamprechaun" project or production.

14) Defendants, and each of them, have had, have, and shall in the future have, any rights, title, interests or expectancies, of any kind or nature whatsoever (including without limitation with respect to participation or creative involvement in, or any credits, attributions, compensation, remuneration or other consideration, arising from or relating in any way to the "Vamprechaun" character, script, project or any productions relating thereto.

b. Contacting, or assisting others in contacting, directly or

9

Jones, et al. v. Thompson et al.,                                JUDGMENT PURSUANT TO STIPULATION
2:17-cv-1619-MWF-RAO

indirectly, any person or entity whom Defendants, or any of them, have known, know or may in the future come to know, or have reason to believe, is a potential or actual financier, errors and omission insurer, completion bond provider, or distributor of the "Vamprechaun" project or production, and communicating with any such persons regarding Jones, Saadi, Vamprechaun Productions or any assertions, claims, statements or contentions by Defendants, or any of them, with respect to the "Vamprechaun" project or production or any aspect thereof;

    c. In any other manner whatsoever, by any means whatsoever, interfering with the completion and exploitation of the "Vamprechaun" project and production, and any motion picture, television, merchandising, literary, musical, theatrical, dramatic, comedic, internet, or other products, services or activities arising therefrom or relating thereto, also including without limitation any sequels, prequels or other works based on said character, project or production, by Plaintiffs, or any of them, or their successors or assigns.

  3. Each of the Parties shall bear their own respective attorneys' fees, costs of suit and other expenses incurred in, arising from or in any way related to this action.

  4. This Court shall retain jurisdiction of this matter for purposes of construction, modification and enforcement of this Judgment.

Dated: March 28, 2017

_____
Hon. Michael W. Fitzgerald,
United States District Judge

10

Jones, et al. v. Thompson et al.,             JUDGMENT PURSUANT TO STIPULATION
2:17-cv-1619-MWF-RAO